| | |
|---|---|
| *TABETHA L. BROWN,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )   *No. 2:16-cv-00535-JHR* |
| | ) |
| *NANCY A. BERRYHILL,* | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

## *MEMORANDUM DECISION*[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) failed to properly evaluate a report of a neuropsychological evaluation by Laura Slap-Shelton, Psy.D., and a residual functional capacity ("RFC") assessment by treating nurse practitioner ("NP") Kathleen M. Truslow, FNP-C, PMHNP-C, and (ii) erred in finding that the plaintiff's impairments did not meet the criteria of Listing 12.05(C), Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"). *See* Itemized Statement of Errors Pursuant to Local Rule 16.3

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 16.

Submitted by Plaintiff ("Statement of Errors") (ECF No. 10) at 2-5. I conclude that the ALJ committed no reversible error. Accordingly, I affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had severe impairments of a cognitive impairment/borderline intellectual functioning, learning disorders, attention deficit hyperactivity disorder ("ADHD"), depression, and anxiety, Finding 2, Record at 16; that she did not have an impairment or combination of impairments that met or medically equaled the criteria of Listings 12.02, 12.04, 12.05, 12.06, or any other listing, Finding 3, *id*. at 17-18; that she had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she had a limitation in concentration, persistence, or pace with the ability to understand, remember, and carry out simple tasks and was limited to object-oriented tasks, with only occasional superficial work-related interactions with the general public, Finding 4, *id*. at 20; that, considering her age (born on February 10, 1982, and, thus, in the "younger individual" age category at all relevant times), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 22-23; and that she, therefore, had not been disabled since May 6, 2013, the date that she filed her application for SSI benefits, Finding 10, *id*. at 24.[2] The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[2] The plaintiff had also amended her alleged onset date of disability to May 6, 2013. *See* Record at 14.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

## I. Discussion

### A. The ALJ's Evaluation of Opinion Evidence

The plaintiff first argues that the ALJ improperly rejected portions of the Slap-Shelton report suggesting that she could not work without significant accommodation, as well as NP

Truslow's opinion that she had disabling mental limitations. *See* Statement of Errors at 2-4. I find no reversible error.

### 1. The Neuropsychological Evaluation of Dr. Slap-Shelton

Dr. Slap-Shelton completed a neuropsychological evaluation of the plaintiff in 2013. *See* Record at 290-315. After administering the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), she concluded that the plaintiff had a full-scale IQ score of 67, which placed her "in the Extremely Low range and the 1st percentile for overall intellectual processing." *Id*. at 290, 297. Dr. Slap-Shelton also found that the plaintiff was "functioning in the range of mild Mental Retardation" and had severe learning disorders, major depression, and ADHD. *Id.* at 297. She concluded that the plaintiff's "reading, writing and math skills [were] below the level needed to function independently as an adult[.]" *Id.* She added:

> [The plaintiff] will require significant supports for employment, and will do best in situations in which she performs simple tasks with positive friendly supervision and protection from negative interactions with co-workers, as she is a vulnerable individual with significantly low self-esteem and impaired comprehension.

*Id*. She recommended that the plaintiff would "benefit from Vocational Therapy to help her develop a plan for part time employment or sheltered employment." *Id.* at 298. She assessed the plaintiff with a GAF score of 45. *See id*. at 300.[3]

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

In the context of summarizing the record evidence, the ALJ set forth Dr. Slap-Shelton's diagnoses and some of the test results underpinning them. *See id.* at 17-20. In the context of discussing the opinion evidence of record, she stated, in relevant part:

> To the extent . . . Dr. Slap-Shelton assessed the claimant [with] a GAF of 45, which could be consistent with serious symptoms and/or impairment of [her] social and/or occupational functioning, this is inconsistent with the [record and medical evidence], and is given minimal/less than probative weight with respect thereto.

*Id.* at 22 (citations omitted).

She explained that, with respect to the opinion evidence concerning the plaintiff's functioning, she gave "significant probative weight" to the assessments of agency nonexamining consultants Lewis F. Lester, Ph.D., and David R. Houston, Ph.D., both of whom had considered the Slap-Shelton report as well as a report of a psychological evaluation by agency examining consultant Roger Ginn, Ph.D. *See id.* at 21, 59-65, 74-80, 419-20.

The plaintiff complains that, to the extent that the ALJ rejected the Slap-Shelton report, she failed to give adequate reasons for doing so, and she failed to directly address Dr. Slap-Shelton's finding of a need for supported employment. *See* Statement of Errors at 3. She contends that the Slap-Shelton report "supports that [she] cannot engage in employment without significant accommodation which would not be available in competitive employment[,]" and, while Dr. Slap-Shelton stated that she would "do best" with the specific protections mentioned, the report overall suggests that those protections were necessary for the performance of full-time employment. *Id.* (quoting Record at 297).

Elaborating on these points at oral argument, the plaintiff's counsel contended that, although Dr. Slap-Shelton was not a treating source, several factors relevant to the weighing of "medical opinion" evidence counseled in favor of the adoption of her opinion: its supportability,

given the extensive testing underpinning it, and Dr. Slap-Shelton's status as a specialist and an examining (rather than nonexamining) consultant.[4]

The plaintiff asserts that the ALJ's error in discounting or ignoring Dr. Slap-Shelton's opinion was not harmless given the testimony of a vocational expert ("VE") at hearing that a need for "positive, friendly supervision and protection from negative interaction with coworkers" would be available only in "a sheltered situation" and "would preclude regular competitive employment[.]" Statement of Errors at 2, 4; Record at 53.

While I agree with the plaintiff that portions of the Slap-Shelton report qualify as "medical opinions" that the ALJ was required to evaluate pursuant to 20 C.F.R. § 416.927(c), I find no harmful error.[5]

First, as the plaintiff's counsel acknowledged at oral argument, although Dr. Slap-Shelton saw the plaintiff on five occasions, she was an examining, rather than a treating, source. Therefore, the ALJ was not required to provide good reasons for her handling of those opinions, as would be true for the opinions of a treating source. *See Tompkins v. Colvin*, No. 1:13-CV-73-GZS, 2014 WL 294474, at *3 (D. Me. Jan. 27, 2014) ("A onetime examining consultant is not a 'treating

---

[4] The factors relevant to the assessment of the weight to be given medical opinions are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. § 416.927(c).

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). There is no dispute that Dr. Slap-Shelton is an acceptable medical source. The commissioner contended that Dr. Slap-Shelton's statements do not qualify as "medical opinions" because they do not constitute a mental RFC assessment. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 4, 6. However, "medical opinions" are not limited to RFC assessments; they are defined more broadly as statements "reflect[ing] judgments about the nature and severity of your impairment(s)[.]" 20 C.F.R. § 416.927(a)(2).

source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons.") (citation and internal quotation marks omitted).[6]

However, in any event, the ALJ provided good reasons for her decision to accord minimal weight to Dr. Slap-Shelton's GAF score assessment, explaining that she deemed a finding that the plaintiff had serious symptoms and/or impairment of her social and/or occupational functioning "inconsistent with the just discussed record and the aforementioned medical evidence[.]" Record at 22 (citation omitted).

As the commissioner notes, *see* Opposition at 5-6, that contrary evidence included not only the Lester and Houston mental RFC assessments but also evidence that the plaintiff had previously worked as a cashier and fast-food worker, cared for her children, including a child with special needs, completed housework, shopped for food and prepared meals, had recently completed course work toward her high school diploma, with plans to take further courses to that end, and used a computer, *see* Record 18, 21.[7]

Moreover, the ALJ accorded significant probative weight to the RFC opinions of Drs. Lester and Houston in part because they had considered the Slap-Shelton report. *See id.* at 18-19. In that respect, as the commissioner notes, *see* Opposition at 5, the ALJ took the Slap-Shelton findings into account indirectly, as well as directly, *see, e.g., Preston v. Colvin*, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at *4 (D. Me. Oct. 21, 2014) (ALJ did not err in failing to adopt

---

[6] At oral argument, the plaintiff's counsel contended that the requirement that an ALJ provide good reasons for the handling of a treating source opinion does little more than restate the requirement applicable to the handling of any medical opinion: to provide an adequate explanation for the weight given it. Yet, while the relevant regulation requires the evaluation of every medical opinion, it promises the provision of "good reasons" only for the weight given to the opinion of a treating source. 20 C.F.R. § 416.927(c)(2).

[7] Drs. Lester and Houston found that the plaintiff could "understand and remember simple tasks and procedures[,]" could "be reliable and sustain 2-hour blocks at simple tasks at a consistent pace without significant interruption from mental symptoms over a normal work day/week[,]" could not "interact with the public due to her cognitive compromises, anxiety and depression" but could "interact with co-workers and supervisors in a normal work setting[,]" and could "adapt to routine changes[.]" Record 63-64, 78-80.

opinion of examining consultant when she relied on opinion of agency nonexamining consultant who had reviewed it and adequately stated her reasons for giving examining consultant's opinions only some weight).[8]

While, as the plaintiff's counsel noted at oral argument, the ALJ could have chosen to afford greater weight to the Slap-Shelton findings on the basis of the factors he highlighted, she was not obliged to do so. It was her province to weigh the evidence and to choose to discount the Slap-Shelton findings on the basis of their inconsistency with other record evidence. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").[9]

Turning to the ALJ's failure to discuss portions of the Slap-Shelton report discussing vocational considerations, the plaintiff points to no authority that an ALJ is required to discuss, as well as to consider, every medical opinion contained within the report of an examining source. Nonetheless, assuming error, it is harmless. The ALJ articulated why, in connection with Dr. Slap-Shelton's GAF score assessment, she gave little weight to her opinion that the plaintiff had, *inter alia*, a serious impairment in occupational functioning. There is no reason to believe that, had the

---

[8] At oral argument, the plaintiff's counsel asserted that any indirect reliance by the ALJ on the Lester and Houston opinions to account for the Slap-Shelton findings was misplaced because they barely mentioned the Slap-Shelton report, did not treat it as "opinion" evidence, and did not specifically mention Dr. Slap-Shelton's findings regarding the plaintiff's vocational needs. *See* Record at 59-65, 75-80. However, it is too great a stretch to infer that these omissions mean that they simply ignored the relevant portions of that lengthy report.

[9] The plaintiff argues, in passing, that the Lester and Houston opinions do not comprise substantial evidence in opposition to Dr. Slap-Shelton's findings because, whereas Drs. Lester and Houston did not find severe impairments of ADHD, anxiety, or depression, the ALJ did. *See* Statement of Errors at 3. However, that proposition is not self-evident, and she offers neither developed argumentation nor citation to authority to support it. *See id.* Accordingly, the point is waived. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

ALJ directly addressed the portions of the Slap-Shelton report on which the plaintiff relies, the outcome would have been different.

Remand, accordingly, is unwarranted on the basis of this point of error.

## 2. The RFC Assessment of NP Truslow

NP Truslow completed a mental RFC assessment form in 2015 stating that the plaintiff had poor to no ability to, *inter alia*, follow work rules, relate to co-workers, deal with the public, deal with work stresses, function independently, or maintain attention or concentration. *See id.* at 582-84. In the narrative portion of the form, NP Truslow referred readers to Dr. Slap-Shelton's report when prompted to describe the plaintiff's limitations and the findings supporting them, adding: "Intellectual Disability complicated by Attention Deficit and Poor Social Skills." *Id.* at 583. In the section requesting remarks, N.P. Truslow stated that, in her opinion, the plaintiff "would have great difficulty in maintaining part time and full time work due to her social and intellectual deficits." *Id.* at 584.

The ALJ afforded NP Truslow's RFC assessment minimal probative weight, deeming it inconsistent with the medical and other evidence of record. *See id.* at 21-22. She added that, to the extent that NP Truslow assessed a GAF score of 50, which, like a score of 45, can be consistent with serious symptoms and/or impairment of social and/or occupational functioning, the GAF score was inconsistent with medical and other evidence of record. *See id.* at 22.

The plaintiff argues that the ALJ's evaluation of NP Truslow's opinion violated Social Security Ruling 06-03p ("SSR 06-03p"), which governs the evaluation of opinions of non-acceptable medical sources such as nurse practitioners. *See* Statement of Errors at 4; SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 331; 20 C.F.R. § 416.913(a) (nurse practitioners not listed among "acceptable medical sources").

SSR 06-03p provides, in relevant part:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p at 331.

The ALJ complied with that ruling, acknowledging NP Truslow's assessments of the plaintiff's mental RFC and GAF score and explaining that she afforded them little weight because, as in the case of Dr. Slap-Shelton's GAF score assessment, they were inconsistent with other evidence of record, including, as noted above, the plaintiff's activities of daily living and the opinions of Drs. Lester and Houston. *See* Record at 21-22.[10]  No more was required.

Remand, accordingly, is unwarranted on the basis of this point of error.

## B. Listing 12.05(C)

The plaintiff next argues that the ALJ erred at Step 3 in determining that her cognitive impairment/borderline mental functioning did not meet Listing 12.05(C). *See* Statement of Errors at 4-5.  I find no error.

---

[10] As the commissioner points out, *see* Opposition at 8-9, the record evidence that the ALJ deemed inconsistent with the Truslow assessments included NP Truslow's own treatment notes, *see* Record at 17 (summarizing NP Truslow's treatment notes as indicating, *inter alia*, that plaintiff's depression/anxiety "improved with medication and was mild[,]" that she "was generally seen every three months until September 2014 and then had a gap in treatment until May 2015[,]" and that findings on mental status examination "were generally unremarkable").

Prior to amendments effective January 17, 2017,[11] and for purposes of the plaintiff's claim, Listing 12.05(C) read as follows:

> 12.05  *Intellectual disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> ***

> C.       A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05(C).

A claimant bears the burden of establishing that her impairment(s) meets all of the criteria of a listing.  *See, e.g., Dudley*, 816 F.2d at 793.  Here, the ALJ acknowledged that the plaintiff met the IQ requirement as well as the requirement to demonstrate the existence of another mental impairment imposing additional, significant work-related limitation of function.  *See* Record at 18; Finding 2, *id*. at 16.  However, she concluded that "the record fail[ed] to clearly demonstrate that [the plaintiff] ha[d] had this level of functioning with significant deficits in adaptive functioning which initially manifested during the developmental period (prior to age 22)."  *Id.* at 18.

The plaintiff contends that this finding is both unsupported and misstates the requirements of the listing.  *See* Statement of Errors at 4-5.  She points out that she was not required to demonstrate that she had "the same level of impairment" prior to age 22 but, rather, pursuant to

---

[11] The commissioner revised the Listings regulations regarding mental disorders effective January 17, 2017, to reflect, *inter alia*, "advances in medical knowledge."  Revised Medical Criteria for Evaluating Mental Disorders "Revised Criteria"), 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016).  The version of the Listings in effect as of the date of the ALJ's decision controls.  *See, e.g.*, Revised Criteria, 81 Fed. Reg. at 66138 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

the so-called "capsule definition" of Listing 12.05, that her impairment caused "deficits in adaptive functioning initially manifested" prior to age 22. *Id*. at 5; Listing 12.05(C). She argues that she should have been found to meet that standard in view of her age at the time of testing (only 31), her need for special education while in school, her failure to complete the requirements for a GED, and her lack of any significant work history. *See* Statement of Errors at 5.

While the ALJ did misstate the standard, I conclude that the error is harmless in that her analysis demonstrates its correct application, and her conclusion that the plaintiff did not meet that standard is supported by substantial evidence. She acknowledged the evidence on which the plaintiff relies but explained why she did not consider it dispositive in her favor, stating:

> [D]espite having received special education through the 9th grade and failing to obtain a GED, [the plaintiff] has taken classes for same and per the record she has taken classes to obtain her high school diploma (taking classes 3 days a week for 8 months, passing courses in English, math and art and needing 12 credits for her diploma) and is about to resume same. Also, she has done some work activity, including as a cashier and fast food worker and, as hereinafter discussed, . . . it is concluded she has had only mild restriction of her daily activities, as she has cared for her children, including one child with special needs, done housework, meal preparation and shopping, used a computer and attended school. Moreover, [Drs. Lester and Houston], in assessments dated February 20, 2014, and August 21, 2014, which considered the neuropsychological evaluation of Dr. Slap-Shelton and the consultative psychological evaluation of Dr. Ginn, opined that the [plaintiff] did not have an intellectual disability . . . which was documented during the developmental period and which resulted in severe impairment of adaptive functioning.

Record at 18 (citations omitted).

As the commissioner contended both in her brief and through counsel at oral argument, the facts of this case are strikingly similar to those of *Libby v. Astrue*, No. 2:10-cv-292-JAW, 2011 WL 2940738 (D. Me. July 19, 2011) (rec. dec. *aff'd* Aug. 24, 2011), *aff'd*, 473 Fed. Appx. 8 (1st Cir. 2012), in which this court upheld an ALJ's determination that a claimant had failed to

demonstrate, for purposes of the Listing 12.05 capsule definition, that her impairment caused deficits in adaptive functioning initially manifested before age 22.

The claimant in *Libby* had been provided with special education classes, failed to earn a high school diploma or GED, and had difficulty running a cash register at work, but also had a driver's license, cooked, cleaned, helped care for her disabled husband, and occasionally babysat grandchildren. *See Libby*, 2011 WL 2940738, at \*11-\*12.[12]  The court concluded that, while "the evidence as a whole does not compel a conclusion that the plaintiff failed to meet the capsule definition of Listing 12.05[,] . . . it permits that conclusion." *Id.* at \*12.   The same is true here.

At oral argument, the plaintiff's counsel contended that *Libby* is distinguishable because: (i) in this case, his client was in special education, had a poor prior work history, and attempted but failed to complete a GED, switching to adult education classes because she found the GED work too difficult, and (ii) in *Libby*, the record contained conflicting expert evidence that the court recognized the ALJ was required to resolve.  I perceive no material distinction.

The claimant in *Libby*, like the plaintiff here, also produced evidence that she was in special education at school, had tried but failed to obtain a GED, and had, if not a "poor" work history, difficulty at work running a cash register.  *See id*.  And, while here, unlike in *Libby*, there is no conflict in the expert evidence, that fact bolsters, rather than undermines, the ALJ's finding. Whereas, in *Libby*, there was conflicting expert evidence as to whether the claimant's impairment met Listing 12.05(C), *see Libby*, 2011 WL 2940738, at \*11, here, Drs. Lester and Houston agreed that her impairments did not meet any listing, *see* Record at 61, 76-77.

---

[12] The *Libby* court was "unpersuaded that the capsule definition requires exclusive focus on a claimant's deficits in adaptive functioning *prior to* age 22[,]" observing that "[c]ourts construing the capsule definition of Listing 12.05 have considered evidence of a claimant's current adaptive functioning relevant to, and even dispositive of, the question of whether that definition is satisfied."  *Libby*, 2011 WL 2940738, at \*10 (emphasis in original).

On this record, as was true in *Libby*, "this court must refrain from the temptation to resolve conflicts differently than the [ALJ] and substitute its judgment for hers."   *Libby*, 2011 WL 2940738, at *12.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 15th day of October, 2017.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge